HAYMES v. BROWN et al.

(Circuit Court, W. D. Virginia. June 2, 1904.)

1. UNITED STATES—ACTION AGAINST REVENUE OFFICER FOR WRONGFUL SEIZURE—DEFENSES.

Rev. St. § 989 [U. S. Comp. St. 1901, p. 708], providing that "when a recovery is had in any suit or proceeding against a collector or other officer of the revenue for any act done by him * * * in the performance of his official duty, and the court certifies that there was probable cause for the act, * * * or that he acted under the directions of the * * * proper officer of the government, no execution shall issue against such collector or other officer, but the amount so recovered shall * * * be paid * * * from the treasury," clearly contemplates, and by implication authorizes, a recovery against a revenue officer for an official act, although done with probable cause or under orders from a superior, and hence neither of such facts constitutes a defense to an action against such an officer for an unwarranted seizure of property; the effect of a finding of either fact by the court being merely to convert the judgment recovered into a claim against the government.

At Law. On motion to set aside verdict.

N. H. Hairston and A. C. Edmunds, for plaintiff.

Thos. L. Moore, Dist. Atty., and Jno. C. Blair, Asst. Dist. Atty., for defendants.

McDOWELL, District Judge. This is an action for damages by Haymes, who had been a whisky distiller, against Brown, deputy collector, and Agnew, collector, of internal revenue. Some time prior to the institution of this action, because of certain facts which, as reported to him by deputy revenue agents, appeared to afford ground for a suspicion that Haymes was defrauding or attempting to defraud the government of the tax on whisky made by him, the Commissioner of Internal Revenue directed Agnew to seize the distillery of Haymes. Agnew directed Brown to make the seizure, and it was made. Thereupon an information for the forfeiture of the seized property was filed. After some time this forfeiture proceeding was dismissed. No certificate that there had been reasonable cause for the seizure, under section 970, Rev. St. [U. S. Comp. St. 1901, p. 702], was asked for, and none was made. The evidence in the case at bar showed that Brown and Agnew had acted under orders of their superior officer, that there had been no want of due care by them, and that the damage done the plaintiff arose merely from the seizure. The jury were instructed, in effect, to find for the defendants if the jury believed that Haymes had defrauded, or attempted to defraud, the government, or if he had violated the laws or regulations with intent to defraud. They were instructed, if they did not so find, to bring in a verdict for the plaintiff for the actual damages sustained by him by reason of the seizure. Several instructions offered by the defendants were refused. These instructions were based on the theory that there could be no recovery if the Commissioner had reasonable grounds for suspecting that Haymes had been violating the law. The jury reported a verdict for the plaintiff, and assessed his damages at $600. A motion has been made by the defendants to set aside the verdict, which is now to be considered. This motion is founded (1) on the ground that the amount of damages is greater than was justified by the evidence, and (2) on the ground of errors by the court in regard to the instructions.

1. As to the first ground, I have no difficulty in concluding that it is without merit. I think the evidence fully authorized the amount assessed by the jury.

2. The second ground for the motion gives me more trouble. If the rights of the parties are to be decided on common-law principles, I think I not only misdirected the jury, but that I should have given a peremptory instruction that the jury find for the defendants. The Commissioner is not a party defendant. If I correctly understand the duties of collector and deputy collector, they had no right to question, or to refuse to obey, the instructions of the Commissioner. As they did with due care and in a proper manner what they were ordered to do, there would be no right of recovery against them. See 19 Amer. & Eng. Ency. (1st Ed.) 490; Harding v. Woodcock, 137 U. S. 43, 47, 11 Sup. Ct. 6, 34 L. Ed. 580. However, I thought during the trial, and think now, that this action is not governed by common-law prin-

ciples. The statute, found in 12 Stat. p. 741, now appearing as section 989, Rev. St. [U. S. Comp. St. 1901, p. 708], reads, as far as now of interest:

"When a recovery is had in any suit or proceeding against a collector or other officer of the revenue for any act done by him * * * in the performance of his official duty, and the court certifies that there was probable cause for the act, * * * or that he acted under the directions of the * * * proper officer of the government, no execution shall issue against such collector or other officer, but the amount so recovered shall * * * be paid * * * from the Treasury."

In this statute recoveries of damages against collectors who acted under authority of the proper officer are most clearly contemplated. So, also, are recoveries against officers who have themselves authority to act and who had reasonable or probable ground for their act. It is clearly contrary to reason and to the spirit of our laws that a public officer should be personally responsible for the injury inflicted by a seizure, if the officer acted under an order from the proper superior officer, as to which the former had no discretion. So, also, when an officer is charged with the duty of making a seizure under certain circumstances, it is clearly wrong that he should suffer, if he acted prudently and reasonably, because his belief that there was cause for seizure should subsequently turn out not to be well founded in fact. Consequently, if the statute in question had not been enacted, I should say that there could be no recovery here against the defendants. But by this statute Congress has by the clearest implication shown that it is the policy of the government in such cases that for the injury thus inflicted the person whose property is seized shall be compensated by the government. I think this statute means: (1) Where the officer who ordered the seizure had no reasonable grounds for suspecting a violation of law, the recovery against him, if he is sued, shall be personal, and shall be collected from him. (2) Where the subordinate officer who made the seizure had no order from a superior to make it, and acted without reasonable grounds for suspecting a violation of law, the recovery shall be against him personally, and shall be collected from him. (3) But where the seizure was made under orders from a proper superior officer, or where the seizure was made on what reasonably seemed to be proper cause, the recovery may still be had against the officers; but it is, by the certificate provided for in the statute, converted into a recovery against the government. If this is not the meaning of the statute, I am at a loss to understand what it does mean. Surely Congress was not making provision to relieve revenue officials, and to provide for payment by the government, in contemplation of illegal judgments to be rendered by the courts. If the intent was not to allow recoveries in such cases as we have here, the statute would simply have forbidden recoveries where the officer acted under proper orders, or where there was reasonable ground to suppose that the seizure should be made, or, perhaps there would have been no statute enacted. The question might have been left as at common law.

It has some tendency to support the view here taken that Congress regularly makes appropriations to "pay judgments against internal revenue officers." See for instance Act Feb. 14, 1902, c. 17, 32 Stat. pt. 1, p. 29. Whether the policy indicated by the statute thus construed

is wise or not is a question with which, of course, the courts have no concern. It is true that the policy of allowing damages to distillers, who, although actually free from guilt or guilty intent, have so acted as to give reasonable grounds for a suspicion of attempt or intent to defraud, may seem of doubtful wisdom. But Congress, and not the court, is to determine the wisdom of the policy. If the intent of Congress is clear, the courts must give effect to such intent. And as the selection of the officials who order and make seizures is made by the government, and not by the distillers, there is force in the argument that the former, rather than the latter, should suffer the damage caused by only seemingly justified seizures. Hence there is at least some reason for supposing that Congress had the intent which seems to me to be necessarily derived from section 989. If the intent of Congress had been that evidence showing that there was seemingly good cause for ordering or making the seizure could be submitted to the jury in the action for damages, and that it should prevent a recovery of damages against either the officers or the government, it seems to me that section 989 would have been very differently expressed. If such had been the intent, I think this section would have been expressed in some such language as:

"Upon the trial of any action against a revenue officer for damages for illegal seizure of property, it shall be a complete defense if the jury believe that there was seemingly good cause for making such seizure."

But Congress has clearly not expressed such intent. Section 989 as written leaves the question of probable cause to the court, and not to the jury. And if the court, after hearing the evidence in the damage suit, considers that there was probable cause (or that the subordinate official who is sued acted under orders of a superior), the court is authorized, by so certifying, to convert the judgment into one in effect against the government, and can save the blameless official from a personal judgment. But there is nothing in section 989 to show an intent that the court can submit the question of probable cause to the jury as matter tending to prevent a verdict and judgment in favor of the plaintiff, or an intent that the court can prevent a judgment from being rendered.

If I have correctly arrived at the intent of this statute, the question of the reasonableness of the act of the Commissioner of Internal Revenue is wholly foreign to this case, so far as the instructions given the jury are concerned. On common-law principles the direction to seize given by the Commissioner, regardless of the reason or want of reason for such direction, would fully justify the acts of the defendants. Under the statute, if I construe it correctly, this justification does not deprive the plaintiff of his right of recovery, but merely converts his judgment into one, in effect, against the government. It is true that the provisions of section 970, Rev. St., throw some doubt on the correctness of the foregoing reasoning. If, upon a verdict and judgment in behalf of the claimant in the forfeiture proceeding, the trial judge could, under the provisions of section 970, by a certificate that there was reasonable ground for making the seizure, destroy the claimant's right of action for damages caused by the illegal seizure, it may seem, even when no such certificate was asked for and none was given, that

it would be a conclusive defense on trial of the damage suit, if it should appear that there was reasonable cause for the seizure. Perhaps the best solution of the difficulty presented by the repugnance between these two statutes is to regard section 970 as repealed by section 989. It is true that repeals by implication are not favored. But when the only reasonable interpretation of a later statute shows a necessarily implied intent which is clearly repugnant to an earlier statute, a repeal by implication is the inevitable result. And unless we treat section 970 as repealed, at least pro tanto, we cannot give effect to so much of 989 as relates to the certificate which converts a personal judgment into one against the government where there was probable cause for the seizure.

But, even if I am wrong in regarding section 970 as repealed, it must be remembered that the defendants here were subordinate officers, that a judgment to be collected from them would be clearly wrong, that there was no certificate given in the forfeiture cause, and that by section 989, as before remarked, the question of the reasonableness of the action of the Commissioner of Internal Revenue is clearly left, not to the jury, but to the court. And if the court decides that there was probable cause, the limit of its power is to so certify, and thus prevent execution going against a defendant personally. No power to set aside a verdict for the plaintiff, or to refuse to enter a judgment for him, is given by section 989. And assuredly, as no power is given to submit the question of reasonable cause to the jury, there is no power in the court to instruct the jury to find for the defendants, if they believe there was probable cause. Section 989, the later statute, must in this case govern us.

In the case at bar I have not considered the question of probable cause. The certificate to be added to the judgment need only be to the effect that the defendants here acted under the orders of the proper officer of the government. I have not been referred to, and I have been unable to find, any decision which seems to me controlling, or which is even of any considerable assistance, on the question here presented.

Averill v. Smith, 17 Wall. 82, 90, 21 L. Ed. 613, was a case in which the court in the forfeiture case had certified that there was probable cause for the forfeiture. The Supreme Court said:

" * * * Inasmuch as the District Court * * * certified that there was probable cause for the seizure, the court is of opinion that trespass will not lie for that act."

So far as appears, the statute now appearing as section 989 was not called to the attention of the court.

Stacey v. Emery, 97 U. S. 642, 24 L. Ed. 1035, was also a case in which a certificate of probable cause had been issued at the conclusion of the forfeiture case; and in this case it does not appear that the court's attention was called to section 989.

United States v. Sherman, 98 U. S. 565, 25 L. Ed. 235, decides only that, where a certificate is given (under section 989), interest does not run between the date of the judgment and the date of the certificate. However, this case has at least a tendency to sustain the view above expressed as to the meaning of section 989.

132 F.—34

The case of Harding v. Woodcock, 137 U. S. 43, 11 Sup. Ct. 6, 34 L. Ed. 580, above cited, may seem strongly persuasive against the view here expressed. But it was decided on common-law principles, and it does not appear that section 989 was called to the attention of the court. Moreover, that was a tax case, and the party whose property was distrained could have avoided damage by paying the tax under protest; and the amount thus paid could have been subsequently recovered by proper action.

The case of The Conqueror (D. C.) 49 Fed. 99, and 166 U. S. 110, 17 Sup. Ct. 510, 41 L. Ed. 937, is of interest, and is to some extent in support of the views above expressed. Vanderbilt, an American citizen, purchased a foreign-built yacht and brought it to this country. Under instructions from the Treasury Department, on the ground that the yacht was a dutiable article, the collector seized it. Vanderbilt then brought an action to recover the vessel and damages for its detention by the collector. The District Court held the vessel not dutiable, ordered its restoration to Vanderbilt, and awarded a large sum in damages to Vanderbilt. With the decree for damages was entered a certificate that the collector had acted under orders of the Secretary of the Treasury, and that there was probable cause for the acts done by him. The Circuit Court of Appeals affirmed the trial court's decrees. The Supreme Court held that as to some of the items of damage the amount allowed was excessive, and remanded the cause in order that these errors might be corrected. The opinion, however, supports the right of Vanderbilt to proper damages for the detention of the vessel, and nothing in its suggests that payment of such damages out of the treasury would be improper. Indeed, at page 124, 166 U. S., page 515, 17 Sup. Ct., 41 L. Ed. 937, the court says that the case is governed by section 989.

The conclusion I reach is to overrule the motion, enter judgment, and certify that the defendants acted under direction of the proper officer of the government. I regret to have to leave this question after a rather hurried consideration. But, even if I entertained greater doubt than I do entertain as to the proper course to pursue, I would still overrule the motion. The question presented ought to be passed on by the appellate court. I am satisfied that the plaintiff cannot afford to take the case higher. The government, in the name of the defendants, can, and I hope will, sue out a writ of error.

### Order.

The motion of defendants that the verdict be set aside and a new trial granted having been argued by counsel, it is considered by the court that said motion be, and it is hereby, overruled. It is further considered by the court that the plaintiff recover of the defendants the sum of $600, with interest thereon at the rate of 6 per centum per annum from April 16, 1904, until payment, and his costs in this behalf expended. And the court does hereby certify that the defendants, in making the seizure complained of, acted under the orders of the proper officer of the government. It is therefore further ordered that no execution shall issue to enforce said above judgment against said defendants, or either of them; but said judgment shall be provided for and paid out of the proper appropriation from the treasury.